UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Georgianne Caldwell and
Andrew Caldwell

    v.                                        Civil No. 17-cv-021-LM
                                                      Opinion No. 2019 DNH 162

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB

In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

O R D E R

Georgianne and Andrew Caldwell bring suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranty claims, and a claim for violation of consumer protection laws. Plaintiffs' suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. The case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss on a variety of grounds.[1] Plaintiffs object.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

Georgianne Caldwell had a surgical procedure at Saint Joseph's Candler Health System in Savannah, Georgia, on April 19, 2012, to remove a previously placed piece of mesh and to repair her hernia with a piece of C-QUR mesh. She continued to have drainage from the surgical site and was admitted to the hospital on May 10, 2012, because of a post-operative abscess of her anterior abdominal wall. She continued to have problems with the hernia and mesh site. On July 24, 2015, Caldwell had surgery to remove the mesh and repair the hernia.

Atrium, which designed, marketed, and sold the C-QUR V Patch mesh that was implanted into Caldwell, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Plaintiffs allege that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Plaintiffs allege, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to

be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. Plaintiffs further allege that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. They allege claims of negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), and violation of consumer protection laws (Count VII). They seek compensatory damages, enhanced damages, and damages for loss of consortium.

## DISCUSSION

Defendants Atrium and Maquet move to dismiss plaintiffs' breach of warranty claims as time-barred. They also argue that Georgia law governs the liability portions of plaintiffs' claims and that under Georgia law the breach of warranty claims and consumer protection law claims must be dismissed. Plaintiffs object, arguing that their breach of warranty claims are not time-barred, that New Hampshire law applies to their claims, and that their claims are adequately pleaded.

I. <u>Statute of Limitations</u>

The parties agree that New Hampshire's statutes of limitations, as procedural rules of the forum state, apply in this case. See <u>TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at \*3 (D.N.H. Sept. 29, 2015)</u> (discussing circumstances under which it is

3

appropriate for this court, sitting in diversity, to apply New Hampshire's statute of limitations). They further agree that plaintiffs' breach of warranty claims, Counts V and VI, are governed by RSA 382-A:2-725.

RSA 382-A:2-725(1) provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RSA 382-A:2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Id. The discovery rule for future performance does not apply to implied warranties. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 853 (2005). While equitable tolling and the fraudulent concealment rule may extend the limitation period for purposes of a claim of breach of an express warranty, they do not apply to breach of implied warranties claims. Begley v. Windsor Surry Co., Civ. No. 17-cv-317-LM, 2018 WL 1401796, at *8 (D.N.H. Mar. 19, 2018) (relying on Lockheed Martin Corp. v. RFI Supply, Inc. 440 F.3d 549, 556-57 (1st Cir. 2006)).

Defendants assert that the breach of warranty claims accrued when the mesh product was implanted in April 2012, which is more than four years before plaintiffs brought suit in January 2017. Plaintiffs contend that defendants' warranties extended to future performance of the mesh and, therefore, the accrual date is extended to when the breach of warranty was discovered or should have been discovered. In their reply, defendants argue that the future performance extension does not apply because no such explicit warranty was made and that the future performance extension does not apply to breach of implied warranty claims.

4

As stated above, the discovery rule for future performance does not apply to breach of implied warranty claims. Nor does equitable tolling or fraudulent concealment. Therefore, plaintiffs' claim for breach of implied warranties, Count VI, accrued in April 2012, when the mesh was implanted. Because plaintiffs brought this suit more than four years later, Count VI is dismissed as untimely.

The discovery rule for warranties of future performance does apply to plaintiffs' breach of express warranty claim if defendants' express language warranted the performance of the mesh for a future period of time or permanently. Kelleher, 152 N.H. at 828. At this stage of the litigation, the court is limited to the allegations in the amended complaint and does not have defendants' actual advertising or marketing materials. Plaintiffs allege that defendants warranted that the mesh product was safe and fit for its intended purpose, which was to be permanently implanted into patients. As such, the court may make the reasonable inference that in advertising, marketing, and otherwise promoting C-QUR mesh, defendants expressly warranted the future performance of the mesh product after implant. Therefore, plaintiffs' allegations are sufficient to preclude dismissal of the breach of express warranty claim, Count V, as time-barred at this stage of the litigation. Defendants' statute-of-limitations defense to this claim is better raised in a properly supported motion for summary judgment.

II. Choice of Law

Defendants contend that Georgia has an interest in the case because the mesh was implanted in that state.[2] They further contend that a choice-of-law analysis is necessary because

---

[2] Neither defendants nor plaintiffs suggest that South Carolina is an interested state although plaintiffs live in that state.

Georgia's warranty law conflicts with New Hampshire's warranty law and that, under New Hampshire's choice-of-law principles, Georgia law governs. Plaintiffs argue that a choice-of-law analysis is premature because additional factual development is necessary and that defendants have not sufficiently identified a conflict between New Hampshire and Georgia law. They further contend that if the court engages in a choice-of-law analysis, New Hampshire law governs.

A. Timing of Choice of Law

Plaintiffs argue that a choice of law is premature at this stage of the litigation. They cite cases where courts have found that discovery or development of the record was necessary to resolve the issue of a choice of law. Plaintiffs, however, do not identify any missing information that would be necessary for a choice-of-law determination here or show that this case is not sufficiently developed to address the issue. Therefore, plaintiffs have not shown that a choice-of-law determination is premature, and the court employs the analysis.

B. Standard

The parties agree that New Hampshire choice-of-law principles govern in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–

59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

      C.     Actual Conflict

The parties agree that New Hampshire and Georgia are interested states. Defendants contend that Georgia law applies to the liability portions of plaintiffs' claims. They argue that a conflict exists between New Hampshire and Georgia law with respect to breach of warranty claims because Georgia requires privity and New Hampshire does not.

First, the court notes that defendants acknowledge that under the doctrine of dépeçage, each legal issue is considered separately. See Putnam Resources v. Pateman, 958 F.2d 448, 465 (1st Cir. 1992); Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *1 (D.N.H. Oct. 7, 2011). Here, the legal standards for plaintiffs' claims require different elements of proof. Therefore, dépeçage requires the court to consider the choice-of-law question separately for each claim. Defendants identify a purported conflict with respect to plaintiffs' breach of warranty claims in Counts V-VI. Because defendants do not address or attempt to identify an actual conflict with respect to plaintiffs' product liability claims (Counts I-IV) or their claim for violation of consumer protection laws (Count VII), New Hampshire law applies to the liability portion of those claims. See Aftokinito, 2010 WL 3168295, at *3.

7

With regard to plaintiffs' breach of express warranty claim in Count V, plaintiffs dispute that an actual conflict exists between New Hampshire and Georgia law.[3] Although they acknowledge the requirement of privity for a breach of warranty claim under Georgia law, they cite an exception to the privity rule based on a claim for breach of express warranty. In their reply, defendants argue that the case plaintiffs cite in their objection did not apply Georgia law properly and that the exception would not apply to plaintiffs' breach of express warranty claim in this case. Although the court agrees that the issue of whether there is an actual conflict is far from certain, the better course here is to presume an actual conflict and proceed to a choice-of-law analysis with respect to Count V.

D. Choice of Law as to Breach of Express Warranty Claims

New Hampshire uses a five-factor test for choice of law: "(1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law." Matter of Geraghty, 169 N.H. 404, 409 (2016). "The relative importance of each factor varies depending on the type of case." Lacaillade, 2011 WL 4738654, at *2.

The first factor—predictability of results—"is usually implicated only in suits involving contractual or similar consensual transactions and emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset." Stonyfield

---

[3] Although defendants argue that an actual conflict exists between New Hampshire and Georgia law with respect to a claim for breach of implied warranties, because that claim is barred by the statute of limitations, the court does not address that argument.

8

Farm, Inc. v. Agro-Farma, Inc., No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009) (internal quotation marks and citations omitted). Although breach of warranty claims are contract based, as the parties agree, the warranties allegedly made by defendants are not based on any agreed law. Therefore, the first factor has no weight in this case.

The second factor—maintenance of reasonable orderliness and good relationship among the states in our federal system—requires only that the court avoid applying the law of a state "which does not have substantial connection with the total facts and with the particular issue being litigated." Lessard v. Clarke, 143 N.H. 555, 557 (1999) (internal quotation marks and citation omitted). The parties agree that both Georgia, where the mesh was implanted, and New Hampshire, where Atrium designed, marketed, and sold the C-QUR mesh, have substantial connections to the facts of the case.

With respect to the third factor—simplification of the judicial task—the court is of course more accustomed to New Hampshire product liability law but could also apply Georgia law with little difficulty. See Lacaillade, 2011 WL 4738654, at *3 ("Although it may be easier for a court to apply the forum state's substantive law, it certainly cannot be argued that Maine's law regarding the relevant issue is so complex as to outweigh other competing considerations."). Therefore, none of the first three factors bears on the choice-of-law analysis in this case.

The fourth factor considers the advancement of the forum state's governmental interests. This factor "becomes important only when New Hampshire has a particularly strong policy in reference to local rules of law, which the other state[']s laws under consideration would fail to achieve." Stonyfield Farm, 2009 WL 3255218, at *8 (internal quotation marks, citation, and alterations omitted). "Otherwise, New Hampshire's interest is limited to the fair and efficient administration of justice." Id. (internal quotation marks and citations omitted). Here, as in many

9

other cases, this factor is of limited importance. To the extent it carries any weight, however, it favors the application of New Hampshire law. New Hampshire has an interest in the liability of a New Hampshire company for injuries caused by its products.  See, e.g., Lacaillade, 2011 WL 4738654, at *3 n.4 (noting that New Hampshire has an interest in regulating the liability of its corporations); see also Turcotte v. Ford Motor Co., 494 F.2d 173, 178 (1st Cir. 1974). Therefore, the fourth factor has little relevance but, to the extent it carries any weight, it favors the application of New Hampshire law.

The fifth factor—the sounder rule of law—"allows the court, where everything else is equal, to choose to apply [a] state's rule that it regards as wiser, sounder, and better calculated to serve the total ends of justice, especially where one state's rule lies in the backwater of the modern stream." TIG Ins., 2015 WL 5714686, at *6 (internal quotation marks and citation omitted).  "As such, [this factor] tends to play a tie-breaker role in close cases." Id. (internal quotation marks and citation omitted).  The sounder rule of law depends on the policies behind the conflicting laws and the court's view of "the socio-economic facts of life at the time when the court speaks." Geraghty, 169 N.H. at 412.

In arguing that Georgia law provides the sounder rule, defendants state, without citing any authority in support, that Georgia's privity requirement is not out of the legal mainstream. To the contrary, however, the "absence of privity has usually been held not to be a defense to a breach of express warranty cause of action."[4]  2 Frumer & Friedman, Products Liability § 9.05[1] (Matthew Bender, Rev. Ed. 2018).

---

[4] In addition, regardless of whether they would apply to plaintiffs' breach of express warranty claim in this case, the parties agree that Georgia law has exceptions to the privity requirement for breach of warranty claims.  See also Meyerhoff v. Enhancement Med., LLC, No. 2:15–CV–00078–RWS, 2016 WL 4238643, at *5 (N.D. Ga. Feb. 10, 2016).

Defendants further argue that Georgia provides the sounder rule of law because it should govern "a breach of warranty claim brought by a plaintiff seeking recovery from a product used in its state." Doc. no. 162-1 at 8. The sounder rule of law, however, does not depend on the location of the sale or use of the allegedly defective product. LaBounty v. Am. Ins. Co., 122 N.H. 738, 743 (1982). Instead, a determination on the fifth factor requires consideration of which law would better serve the ends of justice. Benoit, 142 N.H. at 53.

The New Hampshire legislature chose to remove the privity defense to breach of warranty claims. Virgin v. Fireworks of Tilton, LLC, --- A.3d ---, 2019 WL 3583038, at *4 (N.H. Aug. 6, 2019). In doing so, the legislature adopted Alternative C of § 2-318 of the Uniform Commercial Code. Dalton v. Stanley Solar & Stove, Inc., 137 N.H. 467, 470-71 (1993). The absence of a privity defense to breach of express warranty claims serves many policy goals, including forcing manufacturers who represent to the public that their products are suitable and safe for use to make good on their representations and providing plaintiffs with a "direct avenue of recovery from the purchaser to the manufacturer avoids the waste and risk entailed in that circuitous route to recovery." Special Project, Article Two Warranties in Commercial Transactions, 64 CORNELL L. REV. 30, 256 (1978) (citing cases).

RSA 382-A:2-318 provides a uniform standard, is consonant with the general result for breach of express warranty claims and preserves plaintiffs' remedies in product liability cases.[5] Defendants' proffered theories to show that Georgia provides the sounder rule of law are not persuasive. As defendants have failed to show that Georgia provides the sounder rule of law in the context of this case, the fifth factor tips the balance in favor of New Hampshire law. The

---

[5] See Heath v. Sears, Roebuck & Co., 123 N.H. 512, 521 (1983) (explaining that New Hampshire has chosen to put the risk of defective products on manufacturers and sellers).

court will therefore apply New Hampshire law to the liability portion of plaintiffs' breach of express warranty claim.

III. Merits of the Claims

Defendants move to dismiss the breach of express warranty claim under Georgia law for lack of privity. Because New Hampshire law governs, that ground for dismissal fails.

Defendants also move to dismiss Count VII, alleging violation of consumer protection laws. In support, defendants argue that because consumer protection laws in New Hampshire and Georgia are fraud based, the claim must, but fails to, satisfy the particularity requirements of [Federal Rule of Civil Procedure 9(b)](#) under either state's law. Plaintiffs do not dispute that Rule 9(b) applies to their claim of violation of consumer protection laws but contend that their allegations are sufficient to satisfy Rule 9(b).

Plaintiffs allege, among other things, that defendants advertised, marketed, and represented that C-QUR mesh was safe and effective for implantation to repair hernias when they knew that the polypropylene used to make the mesh, the coating on the mesh, the sterilization method, and the packaging caused a variety of serious complications after implantation of the mesh. They also allege that defendants misled physicians and surgeons about the cause of complications in their patients. In the context of this MDL case, defendants are sufficiently aware of the nature of the claim to allow it to proceed and the allegations in the amended complaint are sufficient to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 162) is granted as to Count VI and is otherwise denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 23, 2019

cc: Counsel of Record